**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

---

TYSON EDWARD ARMY,

Plaintiff,

v. Case No. 10-11225

CITY OF DETROIT and DALE COLLINS,

Defendants.
_______________________________________/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendants' motion for summary judgment filed on March 7, 2011. Plaintiff responded on April 4, 2011. The court held a hearing on the motion on May 11, 2011. For the reasons that follow, the court will grant Defendants' motion.

## I. BACKGROUND[1]

Plaintiff Tyson Edward Army and his girlfriend were battered and robbed by two armed men on September 15, 2005. (Mot. Br. 8 & Ex. 1.) Approximately one month later, on October 16, 2005, two Detroit Police Officers arrived at the scene of a car accident in Detroit. (*Id.* at 8 & Exs. 2-3.) A 1989 Chevrolet Caprice was on fire and its driver, Demon Richards,[2] was deceased; he had been shot once in the head. (*Id. at* 8-10 & Exs. 2, 8.) A semi-automatic handgun was on the floor of the Caprice in front of the driver's seat. (*Id.* at 8 & Ex. 2.)

---

[1] Because Defendants have moved for summary judgment, the court recounts the facts in the light most favorable to Plaintiff. However, many of the facts in this section are drawn from Defendants' brief because it provides a clearer presentation.

[2] In the record, Demon is also alternatively spelled "Damon."

Defendant Dale Collins was the officer in charge of investigating the homicide. Three eyewitnesses emerged. Curtis Randels said that from his roof he saw two men fleeing the scene and a third trying to get out of the vehicle from the passenger's side. (*Id.* at 8-9 & Ex. 4.) The third man eventually left the vehicle. (*Id.* Ex. 4.) After Randels came down from the roof, he said he saw one of the men return to the car to retrieve an item. (*Id.*) Randels said the third man was African-American, "may have been in his mid to late" twenties, and was tall, thin, and wearing a white t-shirt and blue jeans. (*Id.*)

A second witness, Allynn McDade, was in her basement when she "heard a boom." (*Id.* Ex. 5.) She came upstairs, looked outside, and saw a man in the front and a man in the back of the Caprice. (*Id.*) The man in the front reached into the back, and then both men fled the scene. (*Id.*) The man in the front was African-American, approximately 25 or 26, five feet, nine or ten inches tall, and of medium build and medium complexion with a "low haircut." (*Id.*) He was wearing a white t-shirt, blue jean shorts, and black gym shoes. (*Id.*) On November 19, 2005, McDade picked Plaintiff out of a line up, identifying him as the front passenger in the vehicle. (*Id.* Ex. 7.)

The third interviewed witness was Morris Bates. Bates heard the crash, and saw four people (including the driver) in the Caprice immediately afterward. (*Id.* Ex. 6.) He identified the three people besides the driver as African-American males. (*Id.*) Of the two men in the back seat, one was wearing a white t-shirt and "black blue jeans." (*Id.*) The front passenger he described as having light skin, in his late thirties, six feet tall, approximately two hundred pounds, and wearing an orange top and black pants. (*Id.*) He reported the rear passengers left the vehicle first, and the front passenger followed a few minutes later. (*Id.*) That front passenger returned to retrieve something. (*Id.*)

Two more witnesses—Richards's mother, Michelle Frost, and his friend, William Bryant—said they had spoken with Richards by phone shortly before his death. (*Id.* Ex. 9-10.) They each stated Richards had said he was with "Dollar," and Bryant identified "Dollar" as Plaintiff. (*Id.*) Richards's girlfriend, Kimberly Forbes, and Bryant both stated that they had heard Plaintiff thought Richards had been one of the men to rob him, though Richards denied it. (*Id.* Ex. 10-11.) Forbes also stated that Richards had told her he was involved in check and credit card fraud schemes with Plaintiff. (*Id.* Ex. 11.) Bryant described Plaintiff as an African-American male in his mid thirties, approximately five feet, eight or nine inches tall, with a stocky build, medium complexion, bald head, and a "little beard and a little chin hair." (*Id.* Ex. 10.) Frost said she had last seen Plaintiff seven years earlier when he was an African-American male with dark skin who was five feet, eight inches tall and was eighteen or nineteen years old. (*Id.* Ex. 9.)

Plaintiff was arrested pursuant to a warrant and charged with first-degree murder, firearm possession by a felon, and felony firearm. After two mistrials, the prosecution dismissed the charges without prejudice on March 29, 2007. However, Plaintiff was on parole, and pled guilty to two parole violations—failure to report and being charged with a crime. He was sentenced to fifteen-to-twenty years' incarceration, which was later reduced by the Michigan Court of Appeals to thirteen years, four months to twenty years. *People v. Army*, No. 280815, 2009 WL 186860 (Mich. Ct. App. Jan. 27, 2009).

**II. STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In deciding a motion for summary

judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "The moving party discharges its burden by '"showing"—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (quoting *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton*, 369 F.3d at 909 (citing *Celotex*, 477 U.S. at 324). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment; the disputed factual issue must be material.

*See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration and emphasis in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of a claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

## III. DISCUSSION

Plaintiff's amended complaint, which is unlikely to win any awards for clarity,[3] asserts seven counts. Six are § 1983 counts against one or both Defendants, and one alleges state-law intentional infliction of emotional distress. Several of the § 1983 counts will also be construed as state-law claims pursuant to an agreement of the parties, of which the court was informed at the hearing.[4] Counsel also informed the

[3] For example, the complaint repeatedly refers to Plaintiff with the pronouns "she" and "her" despite the fact that Plaintiff is male. Count V appears directed solely toward Defendant Collins, but paragraphs 86 and 89 refer to both defendants in passing. The conclusion of the complaint demands a judgment against "all individual Defendants" and the "City of Detroit, its Police Department, jointly and severally" even though only one individual Defendant is named, the "Police Department" is not named, and even if it were, it would not be a proper party to the suit. The amended complaint repeatedly spells Defendant Collins's name incorrectly as "Colins." The court strongly suggests that counsel carefully review and edit all filings before submitting them.

[4] Defendants argue that Plaintiff's malicious prosecution, false imprisonment, false arrest, and intentional infliction of emotional distress claims "carry citation to 42 USC 1983 as a precatory matter. . . . [but t]he text of each . . . count . . . sounds wholly in tort." (Mot. Br. 17.) To the contrary, all but the last of these counts recite constitutionally cognizable claims, *see, e.g.*, *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), and do not cite to any state statute, and the final count, intentional infliction of

court during the hearing that they had reached an agreement that Plaintiff would drop several of his claims. In particular, Plaintiff relinquished all claims against the City of Detroit, and any state-law false imprisonment or false arrest claim against Collins.[5]

In sum, the parties agreed at the hearing that the claims that remain, all directed at Collins, are federal § 1983 claims of *Brady* violations, malicious prosecution, and false arrest and false imprisonment, as well as state-law claims of malicious prosecution and intentional infliction of emotional distress. The court will also resolve the abuse of process claim, which was pled but not raised at the hearing. Because Plaintiff's claims are poorly pled—they are not articulated clearly, nor do the claims align with the counts—the court will address the claims largely as identified by the attorneys at the hearing rather than using the amended complaint as a guide.

Before reaching the claim-by-claim analysis, the court will dispose of Defendants' misplaced arguments directed to *Heck v. Humphrey*, 512 U.S. 477 (1994), and to the applicable statute of limitations for § 1983 claims. Because *Heck* only bars § 1983 actions for damages that would "necessarily imply" the invalidity of the conviction that led to Plaintiff's incarceration, it does not preclude this action. *See* 512 U.S. at 486-87. Plaintiff is serving a sentence for the parole violations of failing to report and being charged with another crime. Because a successful § 1983 suit for malicious

---

emotional distress, does *not* cite to § 1983. However, because Defendants have conceded and Plaintiff has agreed that analogous state-law claims are in fact alleged, the court will treat them here.

[5] Because the parties did not submit a stipulation and proposed order dismissing the City of Detroit, the court will interpret this agreement as a concession that all claims fail against the City, and will therefore grant summary judgment in its favor rather than dismissing the City separately.

prosecution, false imprisonment, false arrest, abuse of process, or *Brady* violations would not necessarily imply that Plaintiff had not failed to report or had not been charged with another crime, *Heck* does not bar his suit.

Second, while Defendants correctly observe that federal civil rights actions borrow the statute of limitations from the state, the Sixth Circuit has held the relevant state statute for all § 1983 claims in Michigan is the three-year period for personal injury actions, *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam), and not that for the specific state-law tort, such as malicious prosecution or false imprisonment. *See Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005); *Fleece v. Rhines*, 3 F. App'x 300, 302 (6th Cir. 2001). Therefore, Plaintiff's federal malicious prosecution and *Brady* counts are not time-barred, although his false imprisonment and false arrest claims are, along with his state-law malicious prosecution claim; the application of the limitations period to these latter counts will be discussed in turn below.

The court will grant summary judgment on all of Plaintiff's claims because they are each either barred by the statute of limitations or because Plaintiff has not pointed to any evidence in the record that would prove them. *See* Fed. R. Civ. P. 56(c), (e); *Matsushita*, 475 U.S. at 586-87; *Horton*, 369 F.3d at 909 (citing *Celotex*, 477 U.S. at 324).

## A. Section 1983

### *1. False Arrest and False Imprisonment*

Plaintiff's false arrest and imprisonment allegations are precluded by the statute of limitations. As noted above, the statute of limitations for a § 1983 action in Michigan is three years. A false arrest or imprisonment cause of action "accrues at the time of

the arrest or, at the latest, when detention without legal process ends." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) (citing *Wallace v. Kato*, 549 U.S. 384, 387-91 (2007)). Therefore, these claims are barred because this suit was filed on March 26, 2010, well over three years past the arrest date of April 12, 2006, and the beginning of legal process.[6]

Even if the statute of limitations did not bar these claims, they would fail as a matter of law. "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (footnote omitted).

> A facially valid warrant is not always sufficient to merit summary judgment in an action brought pursuant to § 1983 when evidence exists that a defendant intentionally mislead or intentionally omitted information at a probable cause hearing for an arrest or a search warrant provided that the misleading or omitted information is critical to the finding of probable cause.

*Id.* at 677 n.4. In this case, Plaintiff was arrested pursuant to a facially valid warrant issued by an independent judicial officer. (Mot. Br. 4, 22.) Therefore, in order to survive summary judgment, Plaintiff must have a source of admissible evidence to show that Collins intentionally mislead the judicial officer who issued the warrant.

Plaintiff argues only that Collins's application for the arrest warrant contained "the false statements that Michelle Frost received a call from her son." (Resp. Br. 7.) However, both the Michelle Frost and May Russell phone records indicate a series of

---

[6] The record does not reveal the date of Plaintiff's arraignment, but indicates, for example, that Plaintiff's first trial ended in December 2006.

three calls lasting approximately one minute around 9:05 and 9:06 p.m. on October 16, 2005. (Resp. Exs. 16-17.) Therefore, this statement was not necessarily false.[7] Because Plaintiff was arrested pursuant to a facially valid warrant issued by a detached and neutral judicial officer, his false arrest and false imprisonment claims fail as a matter of law.

*2. Malicious Prosecution*

---

[7] The phone records arguably conflict, but the court does not find any conflict to be material. The Russell records indicate that two one-minute calls were placed to Frost's number at 9:05 p.m. (Resp. Ex. 16.) Frost's records disclose a one-minute call *to* Russell's phone at 9:06 p.m. (*Id.* Ex. 17.) Neither phone record logs a corresponding incoming call. (*Id.* Exs. 16-17.) Calls from earlier in the day between these two numbers corroborate the slight time discrepancy, but do not show the inconsistency in the "incoming" versus "outgoing" designation. At the hearing, Plaintiff's attorney clarified that his contention is that the three calls never connected, and stated that at trial an expert or keeper of records from a telephone company would testify that every call that connects will be logged as "incoming," without exception. He did not attach to his response, nor did he furnish at the hearing, any affidavit to that effect.

Even if there is no mistake in the records, Plaintiff has not shown a genuine dispute of a material fact sufficient to come within *Voyticky*'s exception to invalidate the judicial officer's finding of probable cause. In order to invoke that exception, Plaintiff must be able to show: 1) that defendant omitted information or provided false information to the judicial officer; 2) that the omission or provision of information was intentional; and 3) that the information was material to the finding of probable cause. *See* 412 F.3d at 677 n.4. At best, Plaintiff has created a genuine dispute over only the first element. He has pointed to no record evidence that Collins's failure to highlight a possible inconsistency in the phone records was intentional, or that, had the phone records been provided, the arrest warrant would not have issued. Collins relied on Frost's statement that the call took place. It is possible, even likely, that Collins pulled Frost's phone records, checked to ensure the number matched the number dialed from Russell's phone, and went no further; all he testified to at Plaintiff's criminal trial was that he had pulled the Frost records. (*See* Resp. Ex. 6 at 36.) Moreover, there was other evidence offered in favor of the arrest warrant, including an eyewitness identification at a lineup. (*See* Resp. Ex. 3.) Consequently, Plaintiff's attempt to nitpick at the minor inconsistency here is unavailing; such inconsistencies are incident to any ongoing criminal investigation conducted by human beings.

In order to prove malicious prosecution in contravention of the Fourth Amendment, a plaintiff must show: 1) the defendant made, influenced, or participated in the decision to prosecute a criminal case initiated against the plaintiff; 2) there was not probable cause for the prosecution; 3) "as a consequence of a legal proceeding, the plaintiff suffered a deprivation of liberty[] as understood in . . . Fourth Amendment jurisprudence, apart from the initial seizure"; and 4) plaintiff prevailed in the criminal proceeding. *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff's claim fails on summary judgment because there is no genuine dispute that there was, in fact, probable cause to prosecute Plaintiff. As discussed above, Plaintiff was arrested pursuant to a facially valid warrant. The warrant application, (Resp. Ex. 3), contains facts that are more than sufficient to rise to the level of probable cause. The warrant application averred that there was evidence to show that several witnesses tied Plaintiff to Richards shortly before the shooting, and that an eyewitness picked Plaintiff out of a lineup as the person she saw with Richards before the shooting and fleeing the scene of the shooting. Plaintiff is without evidence to create a genuine dispute over whether Collins fabricated or withheld evidence that would have been relevant to the probable cause determination, and therefore there is no genuine dispute that there was probable cause to prosecute Plaintiff. *See Fox*, 489 F.3d at 237-38. Consequently, the malicious prosecution claim must fail.

*3. Abuse of Process*

Count V also purports to allege "Abuse of Process." An abuse of process claim has yet to be recognized in this Circuit, but the Court of Appeals has affirmed the

rejection of abuse of process count on the basis that even if such a cause of action exists, the plaintiff would not be able to make out a necessary element of the claim. *Voyticky*, 412 F.3d at 676-77. In particular, the Sixth Circuit has held that the cause would likely require a showing that "the proceeding was 'perverted' for the achievement of an 'ulterior purpose.'" *Id.* at 677. While the complaint contains an allegation that the prosecution was initiated "in bad faith," (Am. Compl. ¶ 85), it does not suggest an "ulterior purpose"; instead, Plaintiff asserts Defendant "intended to charge and convict Plaintiff of the crime," and therefore Defendant is entitled to summary judgment on the abuse of process count. *See* 412 F.3d at 677.

*4.* Brady *Violations*

Plaintiff amended his complaint by stipulation to add an additional count, "Violation of Brady v. Maryland," and while it is the sole count (apart from the intentional infliction of emotional distress claim) that does *not* refer to § 1983, the court finds that any failure of prosecutors to disclose exculpatory or impeachment evidence to Plaintiff would only be cognizable in this federal action under that section, and so construes Count VII as a § 1983 count as well. *See Sykes*, 625 F.3d at 319.

Plaintiff's *Brady v. Maryland*, 373 U.S. 83 (1963), count is difficult to decipher. The court will liberally construe Plaintiff's arguments, but will ignore arguments that do not bear upon the prosecution's obligation to disclose exculpatory or impeachment material.

*Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

373 U.S. at 87. In *Giglio v. United States*, 405 U.S. 150 (1972), the Supreme Court held that *Brady* also requires the disclosure of material impeachment evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Wilson v. Parker*, 515 F.3d 682, 701 (6th Cir. 2008). Police officers bear a "derivative" obligation under the Due Process Clause and *Brady* to disclose exculpatory or impeachment evidence. *Moldowan v. City of Warren*, 578 F.3d 351, 376-81 (6th Cir. 2009). That duty is discharged when the officer delivers the evidence to the prosecutor's office. *Id.* at 381.

Plaintiff appears to present four alleged *Brady* violations. First, he claims Collins did not disclose certain phone records. (Am. Compl. ¶¶ 96-97.) Second, he argues Collins suborned perjury "when he knowingly allowed William Bryant, Lavonce Strickland, . . . Michelle Frost," and Christopher Jones to testify. (*Id.* ¶¶ 98, 101.[8]) Third, he says Collins did not disclose to prosecutors that Christopher Jones was acting as a confidential jailhouse informant or surrogate interrogator. (*Id.* ¶¶ 99-100.) Fourth, he claims Collins did not tell prosecutors that McDade was pressured into picking Plaintiff out of a lineup. (*Id.* ¶ 102.)

Defendants argue that Collins is entitled to qualified immunity because he turned over all material exculpatory or impeachment evidence to the prosecutors, and therefore no constitutional violation occurred. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Coble v. City of White House, Tenn.*, 634 F.3d 865, 870 (6th Cir. 2011) (citing *Aldini v. Johnson*, 609 F.3d 858, 863 (6th Cir. 2010)). "The burden is on the plaintiff to

---

[8] That is, the second paragraph numbered "101."

demonstrate that the officer is not entitled to qualified immunity." *Coble*, 634 F.3d at 870-71 (citing *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010)).

a. Phone Records

As recounted above, Richards's call to his mother, Frost, originated on a cell phone belonging to Russell. Defendants contend Collins turned over the Frost and Russell records to prosecutors. Those records show that Richards placed a call to his mother shortly before he was shot. Defendants argue that if prosecutors failed to turn those records over to Plaintiff, then any claim Plaintiff has is against the prosecutors, and not against Collins.

Plaintiff responds that Collins testified at one of Plaintiff's trials that he also had phone records of Frost, and therefore, he should have turned over those records as well.

Defendants are entitled to summary judgment with respect to these phone records because, as Defendants note, Collins fulfilled his *Brady* obligation by turning over the Frost phone records to prosecutors, and Plaintiff has presented no evidence

that he did not.[9] (*See* Resp. Ex. 6 at 36.) Therefore, there is no genuine dispute over the fact that no constitutional violation occurred with respect to the phone records.

b. Subornation of Perjury

Plaintiff next argues that Collins suborned perjury with respect to the testimony of multiple witnesses. Suborning perjury is an independent due process violation, *see Canter v. County of Otsego*, 14 F. App'x 518, 521 n.1 (6th Cir. 2001), but presumably it can also be dressed up as a *Brady* violation because if prosecutors or officers were to suborn perjury from a witness, they would be withholding impeachment information—that the witness's testimony is false and that it has been solicited by the prosecution.

Defendants argue that because Collins is a police officer, and did not conduct Plaintiff's criminal trial, any assertion of suborned perjury must be directed at the prosecutors, and not at Collins. At the hearing, Defendants also pointed to the absence of evidence in support of this claim. Plaintiff does not respond to either argument.

Plaintiff is not barred as a matter of law from arguing that a police officer suborned perjury; *Moldowan* makes clear that officers have derivative *Brady* obligations.

---

[9] Plaintiff argued at the hearing that his evidence that Collins did not turn over the records is that he did not have them before his criminal trial. That is, he premises that he did not have the records, and that the prosecutors made all required disclosures; from those two premises, he concludes that Collins must not have turned the records over to proseuctors.

This deductive argument fails because there is record evidence that Collins gave the records to the prosecutors. Collins testified to that fact in testimony that Plaintiff cites, and in that same transcript the prosecutor stated that he will produce the records, implying that he had them. (*See* Resp. Ex. 6 at 36.) Thus, to create a genuine dispute, Plaintiff has the burden of producing some direct evidence that Collins did not give the records to prosecutors; he has not met that burden.

If an officer suborned perjury, and did not disclose that fact to the prosecutors, then a jury could find a *Brady* violation.

Nonetheless, Plaintiff's argument fails as a matter of fact. The court cannot locate any record evidence that supports a finding or even suggests that Collins encouraged a witness to lie on the stand, and because his brief skips this argument entirely, Plaintiff points to none. Without a source of admissible evidence on Collins's subornation of perjury, the court cannot let the issue reach a jury. *See* Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."); *Defoe ex rel. Defoe v. Spiva*, 625 F.3d 324, 330 (6th Cir. 2010).

c. Christopher Jones

Plaintiff next argues Collins did not disclose that Jones was working with Collins as a confidential informant or surreptitious interrogator when Jones's conversations with Plaintiff took place in the jail.

Defendants state that Collins never met with Jones to tell him to interrogate Plaintiff, and there is no evidence in the record to support a finding that such a meeting took place. Jones did not come forward until after the first trial, and Collins first met Jones to discuss Plaintiff's case shortly before Plaintiff's second trial; Jones initiated the contact with Collins, which apparently occurred after he was jailed with Plaintiff. Defendants aver that Collins disclosed his prior contact with Jones on a different matter to prosecutors, and turned Jones's statement over to prosecutors.

Plaintiff's response barely addresses Defendants' argument that Collins turned over all information regarding his contact with Jones to prosecutors. The response

insinuates there may have been some handshake deal between Collins and Jones.

Once again, Plaintiff provides no citation to evidence that creates a genuine dispute over whether Collins fully disclosed any and all exculpatory or impeachment material regarding his interactions with Jones, and so has not met his burden to avoid summary judgment on this issue.

d. Lineup

The final *Brady* violation allegation relates to Collins's putative conduct surrounding McDade's identification of Plaintiff in the lineup.

Defendants claim they are entitled to summary judgment on this issue as well. They state that a defense attorney who "shared office space with Plaintiff's retained counsel" was present during the lineup "to assure the lineup was conducted fairly." Defendants note that at first, McDade was attempting to decide between the second and fourth man in the lineup. While Defendants concede that "Collins was present and told McDade that she had to make a decision," they characterize this insistence as "nothing more . . . than inform[ing] McDade that she should take her time and relax, and pick the person that she saw at the scene." (Mot. Br. 35 (footnotes omitted).)

Defendants contend the problem was in part caused by how the lineup was set up. A filing cabinet was placed under the first two numbered positions in the lineup, so that the first man was standing under the number three. Plaintiff was standing under the number four—that is, he was the second man from the left—and no one was standing under the number two. Thus, Defendants say, the confusion between identifying the man by "two" and "four" in fact was no confusion at all, since McDade was referring to the same person, only by two different measures (distance from the left

and number above the head). Defendants state that McDade's statement identifying "number two" and the array photograph were disclosed to prosecutors.

Defendants also assert that any objections regarding differences between the men in the lineup—namely, that Plaintiff was the only male in the lineup with a shaved head and that the lineup was therefore unduly suggestive because McDade had provided a statement on a prior occasion that the suspect had a shaved head—are of no moment, because photographs of the lineup disclosing these differences were provided to prosecutors.

Plaintiff responds that Collins testified that he did not force McDade into making a decision, while McDade testified that he did. Additionally, Plaintiff reasserts the "unduly suggestive" nature of the lineup.

Irrespective of the fairness of the lineup or any conflict between Collins's and McDade's later testimony, Plaintiff cannot make out a *Brady* violation unless some relevant exculpatory or impeachment aspect of the lineup was not disclosed to prosecutors; it is not enough to argue that some feature of the lineup was unfair. And there is simply nothing in the record to indicate Collins did not furnish all information about the lineup in his possession to the prosecutors. Indeed, while McDade's testimony can be read to conflict with Collins's, the fact that Plaintiff was able to cross-examine McDade on whether Collins pressured her into making an identification shows that he had impeachment material in his possession. In any event, this *Brady* claim, too, must fail, because Plaintiff have not met his burden of proof to point to evidence in support of his claim.

Because Plaintiff has not presented any evidence that Collins violated *Brady*, Collins is entitled to qualified immunity on this count.

**B. State-Law Claims**

*1. Malicious Prosecution*

Defendants assert that Plaintiff's state-law malicious prosecution claim is barred by the statute of limitations, because that period is two years, Mich. Comp. Laws § 600.5805(5), and the claim accrued on the date the charges against him were dismissed, *Wolfe v. Perry*, 412 F.3d 707, 715 (6th Cir. 2005) (citing *Cox v. Williams*, 593 N.W.2d 173, 174-75 (Mich. Ct. App. 1999)). Plaintiff offers no response. The charges against Plaintiff were dismissed on March 29, 2007, and this case was filed on March 26, 2010. Because the period is greater than two years, Defendants are entitled to summary judgment on this ground as well.

*2. Intentional Infliction of Emotional Distress*

The amended complaint's allegations under Count VI refer only to "the herein described actions," that is, those that are listed elsewhere in the complaint. (Am. Compl. ¶ 91.) Thus, Plaintiff fails to state with any specificity which actions he believes were undertaken with the requisite mental state of intent or recklessness. In addition, as the court has held, supra, in the resolution of the federal claims, Plaintiff has not pointed to material record evidence that places in genuine dispute the validity of the arrest warrant or the presence of probable cause to arrest and prosecute, nor any material evidence that Collins fabricated evidence or failed to disclose material exculpatory or impeachment evidence. As a result, Plaintiff has no evidence in support of any "extreme and outrageous conduct" by Collins, and therefore cannot prove an

intentional infliction of emotional distress claim. Summary judgment is appropriate. *See Walsh v. Taylor*, 689 N.W.2d 506, 517-18 (Mich. Ct. App. 2004).

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendants' "Motion for Summary Judgment" [Dkt. # 18] is GRANTED. Judgment will follow separately.

s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: May 24, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 24, 2011, by electronic and/or ordinary mail.

s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522